# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHINA MAX, INC., and DE DONG ZHENG, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 14-211 ) |
| v. | ) Judge Cathy Bissoon ) |
| SOUTH HILLS CN LLC, ROSS PARK CC LLC, JING ZHU, DAVID WU, and MAGIC WOK MALL LLC, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons that follow, Magic Wok Mall LLC and David Wu's Motion to Dismiss and Motion to Strike (**Doc. 16**) will be granted in part and denied in part.

### BACKGROUND

China Max, Inc. and De Dong Zheng ("Plaintiffs") seek injunctive relief, declaratory relief, replevin and money damages against South Hills CN LLC, Ross Park CC LLC, Jing Zhu and Magic Wok Mall LLC for identity theft; invasion of privacy by misappropriation of name; tortious interference with contract; breach of contract; breach of fiduciary duty; breach of implied duty of good faith and fair dealing; civil conspiracy; unfair competition; and unjust enrichment arising from Defendants' alleged misappropriation of Plaintiff's name and signature as the guarantor of two commercial leases. Am. Compl. (Doc. 15) at ¶ 16. Defendants Magic Wok Mall LLC and David Wu ("Defendants") filed a Motion to Dismiss and Motion to Strike Plaintiffs' First Amended Complaint. Def.'s Mot. (Doc. 16). As the Court writes primarily for the parties, we will review only the facts most significant to Defendants' pending Motion.

Plaintiffs allege that around August or September of 2009, they enlisted the assistance of Defendants in the negotiation of a franchise and lease agreement with South Hills Village Associates, L.P. Am. Compl. at ¶ 47. Plaintiffs sought to use the China Max name for a restaurant in South Hills Village Mall. Id. at ¶ 48. In the course of negotiations, Plaintiff Zheng shared his personal information with Defendant Wu; Plaintiff Zheng additionally signed an application form. Id. at ¶ 49. Plaintiffs paid Defendants a deposit of $80,000 to facilitate the negotiation. Id. at ¶ 51. In May, 2010, Defendant Wu informed Plaintiffs that he failed to secure a franchise agreement on their behalf, and the $80,000 deposit was returned. Id. at ¶¶ 56-57.

Plaintiffs allege that Defendants used Plaintiff Zheng's personal information and forged his signature in order to name him as the guarantor on two leases – the "Ross Park Lease Agreement" and the "South Hills Lease Agreement," both executed in December of 2009. Id. at ¶¶ 20-46, Exs. B, C.[1] The leases allegedly were executed without Plaintiffs' knowledge or consent. Id. at ¶¶ 20-46. The latter of those two leases pertained to the rental of the very location in South Hills Village Mall that Plaintiffs were attempting to lease in order to open a China Max restaurant. Id. at ¶ 60. Plaintiffs further allege that Defendants' fraudulent activities interfered with the prospective contractual relationship between Plaintiffs and South Hills Village Mall, and breached the contract executed between Plaintiffs and Defendants in which Defendants agreed to assist Plaintiffs in securing a franchise and lease agreement. Id. at ¶ 93-107.

---

[1] The Court notes that Plaintiffs attached exhibits A-D to their original Complaint, filed at Document 1. Plaintiffs' First Amended Complaint, filed at Document 15, cites said exhibits but does not contain attachments. The Court references exhibits A-D filed at Document 1, as it appears that Plaintiff's First Amended Complaint references those same documents. Counsel is directed that in the future, when filing an amended complaint, all attachments must be refiled as well.

Plaintiffs also allege that prior to discovery of the fraud, they engaged in extensive due diligence in order to determine who was causing their injury.[2] See Pl.'s Br. in Opp'n (Doc. 20) at 4-6. Plaintiffs allege that nothing concerning their direct interactions with Defendants, seeking a China Max franchise agreement, appeared fraudulent. Pl.'s Br. in Opp'n at 3-4. Plaintiff Zheng was not successful in securing a China Max franchise in the South Hill Village Mall, but Defendant Wu returned his deposit in May of 2010, and communicated that he simply was not successful; this raised no red flags for Mr. Zheng. Id. at 4. In March of 2012, two years after the return of the deposit, Plaintiff became aware that he was a guarantor to the Ross Park Lease Agreement when he was named in a lawsuit. Am. Compl. at ¶ 20. Plaintiff then retained an attorney and began to investigate the provenance of said lease agreement. Pl.'s Br. in Opp'n at 5. The signature of the signee on behalf of Ross Park CC LLC was illegible. Id. at ¶ 33. Further, Plaintiff investigated and discovered that Ross Park CC LLC was a sham corporation not registered in any state. Id. at ¶ 32. Plaintiff Zheng traveled from his home in Virginia, to New York and Pennsylvania, in order to investigate this lease. Pl.'s Br. in Opp'n at 5. He contacted police departments and attorney general offices, but was unable to determine who perpetrated the alleged fraud. Id. Through his investigations, Mr. Zheng learned that he was also named as a guarantor on the South Hills Lease Agreement, without his knowledge or consent. Am. Compl. at ¶ 34-35. The signature on behalf of South Hills CN LLC was illegible, and South Hills CN LLC appeared to be a sham corporation as well. Id. at ¶ 43; Pl.'s Br. in Opp'n at 6.

Plaintiffs argue that "Zheng did not discover and had no reason to discover his injury and the cause of his injury at least until August 2013". Id. at 16. Plaintiffs contend that it was not until after

---

[2] It is also alleged that Plaintiff Zheng is an immigrant with only an elementary education. Pl.'s Br. in Opp'n at 3. He does not speak, read or understand the English language. Id. To further complicate matters, Mr. Zheng's primary language is Fuzhou dialect; he does not speak Cantonese Chinese, and speaks only very limited Mandarin, which impeded his ability to seek assistance in his investigation of these matters. Id. at fn. 1.

Plaintiff Zheng contacted Defendant Wu, in July or August of 2013, in order to question him about the Ross Park and South Hills Lease Agreements, that Mr. Zheng discovered the fraud. Id. at 15-16; see also Am. Compl. at ¶¶ 62-75. After being questioned about the improper naming of Mr. Zheng as a guarantor, Defendant Wu allegedly sent Plaintiff Zheng a "Revised South Hills Lease Agreement," which contained indicia of further fraud. Compl. at ¶¶ 62-75. It was only after receiving this Revised South Hills Lease Agreement that Plaintiff Zheng discovered that Defendants were responsible for his injuries, allegedly by way of fraudulent acts which began in December of 2009. Id. Plaintiffs allege that this discovery occurred in August of 2013 at the earliest. Pls' Br. in Opp'n at 16. Plaintiffs filed the instant suit on August 11, 2014. Defendants filed a Motion to Dismiss and Motion to Strike Plaintiffs' Complaint.

## ANALYSIS

**Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Defendants move to dismiss Counts II – IX[3] on the basis that they are time-barred. Def.'s Mot. at ¶¶ 23-52. In the Third Circuit, a limitations defense may be raised in a 12(b)(6) motion to dismiss, "but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.' 'If the bar is not apparent on the

---

[3] Defendants do not move to dismiss or strike Count I, which seeks declaratory judgment regarding the invalidity of the Ross Park and South Hills Lease Agreements guaranties. Compl. at ¶¶ 77-83.

4

face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978), Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975)).

Defendants move to dismiss the challenged counts under statutes of limitations ranging from one to four years. Def.'s Br. in Support (Doc. 17) at 5-11. A cause of action accrues when a plaintiff could have first maintained the action to a successful conclusion. Kapil v. Ass'n of Pa. State Coll. and Univ. Faculties, 470 A.2d 482 (Pa. 1983). However, "state tolling principles are generally to be used by a federal court when it is applying a state limitations period." Vernau v. Vic's Market, Inc., 896 F.2d 43, 45 (3d Cir. 1990). Plaintiffs argue that the statute of limitations period has not expired, pursuant to the continuous violation doctrine; the discovery rule; and the fraudulent concealment doctrine. See Pl's Br. in Opp'n.

The discovery rule provides an exception to the general rule that the statute of limitations begins to run as soon as the right to institute and maintain suit occurs, "the salient point giving rise to its application [being] the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured *and by what cause*." Fine v. Checcio, 870 A.2d 580 (Pa. 2005) (emphasis added). The Pennsylvania Supreme Court has further held that:

> when a court is presented with the assertion of the discovery rule[']s application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

Id. at 858-59.

5

Taking all of Plaintiffs' allegations as true – as we must at this stage – the Court finds that the relevant statutes of limitation began to run after Mr. Zheng received the Revised South Hills Lease Agreement. It was that agreement which contained the indicia of fraud leading to Mr. Zheng's discovery of *Defendants'* alleged role in the claims contained in the Amended Complaint. Reasonable minds could not find that Plaintiffs were able to know what caused the injuries alleged, with the exercise of reasonable diligence, prior to that. As the Revised South Hills Lease Agreement was not provided to Plaintiffs until after Mr. Zheng communicated with Mr. Wu in July or April of 2013, it would be inappropriate to dismiss Plaintiffs' claims at this early stage in the proceedings.[4] Defendants' Motion to Dismiss Counts II through IX as time-barred will be denied.

**Motion to Strike**

Defendants move to strike from the Amended Complaint Plaintiffs' requests for attorneys' fees, punitive damages, "and allegations related to them . . . where the legal claims pled do not support them" pursuant to Federal Rule of Civil Procedure 12(f). Def.'s Br. in Support at 12. Specifically, Defendants assert that Plaintiffs impermissibly seek punitive damages and attorneys' fees in their contract and quasi-contract claims at Counts IV, VI and IX. Plaintiffs request punitive damages and attorneys' fees for breach of contract (Count IV), breach of implied duty of good faith and fair dealing (Count VI), and unjust enrichment (Count IX).

---

[4] The Court acknowledges that sufficient facts have not been alleged for a determination as a matter of law with respect to Count II's one-year statute of limitations. It is expected that discovery will bear out the exact date of Plaintiffs' discovery of the fraud. Plaintiffs will have to meet their burden of demonstrating that the discovery rule tolls the statute of limitations until August 12, 2013 or later. Contrary to Defendants' arguments, however, they have not met their burden of demonstrating that no reasonable mind could find that Plaintiffs satisfy the statute of limitations, while accepting the complaint's well-pleaded facts as true. As such, dismissal of this count based on the statute of limitations would be improper, as material facts remain unsettled.

Compl. at "Wherefore" clauses pp. 14, 16, 19.  Plaintiffs do not respond to Defendants' Motion to Strike.

Traditionally, when a plaintiff seeks damages that are not recoverable, a defendant will move to dismiss the prayer for that particular relief under Federal Rule of Civil Procedure 12(b)(6).  See, e.g. Williamsburg Commons Condo. Ass'n v. State Farm Fire and Cas. Co., 907 F.Supp.2d 673 (E.D. Pa. 2012); Johnson v. State Farm Life Ins. Co., 695 F.Supp.2d 201 (W.D. Pa. 2010); Motorola, Inc. v. Airdesk, Inc., 2005 WL 894807 (E.D. Pa. 2005).  As such, the Court construes Defendants' Motion to Strike Plaintiffs' prayer for attorneys' fees and punitive damages at Counts IV, VI, and IX as a Motion to Dismiss the same.  The standard for a motion to dismiss for failure to state a claim is set forth supra.

Plaintiffs have not addressed Defendants arguments, and thus the Court construes these arguments as unopposed.  As the arguments are unopposed, Defendants' Motion to Dismiss any prayer for relief in the form of attorneys' fees and/or punitive damages at Counts IV, VI, and IX will be granted with prejudice.[5]

## II.    ORDER

For the reasons stated above, Defendants' Motion to Dismiss and Motion to Strike (**Doc. 16**) is **GRANTED IN PART AND DENIED IN PART.**  Defendants' Motion to Dismiss

---

[5] The Court notes that Pennsylvania law prohibits recovery of punitive damages on breach of contract claims.  See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 402 (3d Cir. 2004) (citing Thorsen v. Iron & Glass Bank, 476 A.2d 928, 932 (Pa.Super. 1984) ("the law is clear that punitive damages are not recoverable in an action for breach of contract")).  The unjust enrichment alleged in Count IX is a "quasi-contract" remedy, and thus punitive damages are unavailable at that count as well.  Motorola, 2005 WL 894807 at *3 (citing Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969) (describing unjust enrichment as a "quasi-contact" remedy)); Danlin Mgmt. Group, Inc. v. School Dist. Of Philadelphia, 2005 WL 2140314 at *3 (holding that punitive damages cannot be awarded for unjust enrichment that sounds in quasi-contract).  Further, "attorneys [*sic*] fees are not recoverable absent express authority, agreement of the parties or some other established exception."  Reinhold v. County of York, 2012 WL 4104793 at *23 (M.D. Pa. 2012).

7

Counts II-IX as time-barred is **DENIED**.  Defendants' Motion to Strike Plaintiffs' prayer for attorneys' fees and punitive damages at Counts IV, VI, and IX – construed as a Motion to Dismiss the same – is **GRANTED** with prejudice.

    IT IS SO ORDERED.


May 27, 2015                                              s\Cathy Bissoon
                                                             Cathy Bissoon
                                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record